**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DON CARTER<br><br>*Plaintiff*<br>v.<br><br>THOMAS J. RIDGE<br>SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendant* | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | CIVIL ACTION NO. H-04-3919 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case arises under Title 5 United States Code Sections 7702 and 7703, providing for judicial review in the United States District Courts of final determinations by the Merit Systems Protection Board in cases involving discrimination. Plaintiff Don Carter ("Carter") claims that his mental disability, his association with his mentally disabled son, and his participation in proceedings before the EEO prompted his termination from his position at the Department of Homeland Security ("the Agency"). For the following reasons, the Court ORDERS that the Agency's motion for summary judgment (Doc. 25) is GRANTED.

I. <u>Facts</u>

Carter is a pilot. Prior to joining the United States Customs Service, now a division of the Department of Homeland Security, he was a member of the Air Force. During the time period relevant to this case, Carter was based at the Agency's Air and Marine Branch Office in Houston, Texas.

In 1988, while flying a light piston driven aircraft called a Cessna 320, Carter was involved in a near fatal crash. Although physically unharmed, Carter developed Post Traumatic Stress Disorder ("PTSD"). Carter's PTSD is usually dormant and was undiagnosed until 2001.

It becomes aggravated, however, if he pilots light piston driven aircraft similar to the Cessna 320. After the accident, Carter flew only turbine driven planes from 1994-2001.

In 2000, Customs assigned Carter to the Cessna 210, a light piston driven aircraft similar to the Cessna 320. Carter began experiencing anxiety while flying the Cessna 210. He approached his aviation group supervisor, in January 2001, and explained the situation. Carter's supervisor offered him continued training and referred him to the Employee Assistance Program.

Carter then visited an independent physician. He explained his anxiety and told the doctor that he was experiencing difficulty sleeping. The physician diagnosed PTSD and prescribed medication that has proved effective to help Carter sleep.

After being diagnosed, Carter voluntarily provided a letter from his physician to the Agency. In response, he was transferred to ground operations and referred for a fitness for duty examination. The transfer did not effect Carter's pay or benefits. The examination, which was not conducted until December 2002, yielded a recommendation that Carter be allowed to continue as a federal law enforcement officer and pilot but that he not be required to pilot light piston driven aircraft. According to Carter's job description[1], he is required, according to the operational needs of the service, to pilot light to medium single or twin engine airplanes, this includes light piston driven aircraft like the Cessna 210 and 320.

Soon after his transfer, Carter sought counseling at the Agency's Equal Employment Opportunity Office ("EEO"). In March 2002 he filed a complaint with the EEO. Carter's complaint alleges unlawful discrimination on the basis of his mental disability and retaliation for having testified in favor of a co-worker at an EEO hearing conducted in October 2001.[2]

---

[1]*See* Job Description (Ex. B to Defendant.'s Mot. Summ. J.). Unless otherwise noted, all citations are to exhibits attached to Defendant's Motion for Summary Judgment (Doc. 25).

[2]*See* Complaint of Employment Discrimination (Ex. N).

In June 2003, Customs offered Carter two comparable non-pilot positions at the same pay, grade and promotion track as his pilot position. Both jobs, however, required Carter to relocate. Carter declined reassignment in July and requested a hardship allowance to remain in Houston. Customs filed a proposed dismissal in August and terminated Carter in January 2004.

After his termination, Carter voluntarily dismissed his EEO complaint in favor of filing an action before Merit System Protections Board ("MSPB").[3] Before the MSPB, Carter argued that his termination was discriminatory and a reprisal for his prior protected activity.[4] A full hearing was held, and in a lengthy opinion, the Administrative Judge upheld Carter's removal.[5]

II. Law

*A. Mixed Appeals under Title 5 United States Code Section 7703.*

Under Title 5 United States Code Section 7512, the MSPB has jurisdiction to review the following personnel actions: (1) removal; (2) suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less. A mixed case appeal is an appeal claiming that one of those actions occurred and that it was motivated by discrimination. 5 U.S.C. § 7702(a)(1)(B); 5 C.F.R. § 1201.151. After the MSPB has issued a final ruling, an appeal may be taken to the Federal District Court in the district where the agency is located. 5 U.S.C. 7703. The standard of review is *de novo*. *Id.*

Under Agency regulations, it is improper for a federal employee to pursue both an EEO charge and an appeal before the MSPB. *See* 29 C.F.R. § 1614.302 ("an aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 C.F.R. 1201.151, but not both"). Allegations made in pre-termination complaints to the EEO do not merge into complaints before the MSPB for the purposes of exhaustion. *Ikossi v. England*, 406 F.Supp.2d 23, 28 (D.D.C. 2005).

---

[3] *See* Letter (Ex. O) and Order (Ex. P).

[4] *See* Appeal (Ex. Q).

[5] *See* Opinion of the Hon. Mary Malouf (Ex. R).

*B. Discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.*

The Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination. 29 U.S.C. § 794. The act provides that the "standards used to determine whether this section has been violated . . . shall be the standards applied under . . . [the] Americans with Disabilities Act of 1990." 29 USCS § 791.

Under the Rehabilitation Act, to establish discrimination based on disability, plaintiff must demonstrate that: (1) he is an "individual with a disability;" (2) he was "otherwise qualified" for the job in question; (3) he worked for a federal agency or a "program or activity receiving Federal financial assistance;" and (4) he was denied the benefits of his employment or was discriminated against "solely by reason of her or his disability." *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)); *see also Calderon v. Potter*, 113 Fed.Appx. 586, 590-591 (5th Cir. 2004). An "individual with a disability" is any person who (1) has a physical or mental impairment that "substantially limits one or more of such person's major life activities;" (B) has a record of such impairment; or (C) is regarded as having such impairment." *Id.* (quoting 29 U.S.C. § 706(8)(B). Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. 84.3(2)(ii). In the case of working, "the inability to work at the specific job of one's choosing is not a substantial limitation on a major life activity." *Hileman*, 115 F.3d at 354. Rather, "[t]o be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines*, 527 U.S. 471, 492 (1999). Likewise, if a condition is treatable, so as to remove the limitation it imposes, then plaintiff is not an individual with a disability for the purposes of the Act. *Id.* at 482-83("A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits" a major life activity.")

*C. Retaliation under the Title VII of the Civil Rights Act of 1964*

Title VII of the Civil Rights Act of 1964 forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a); *see also* 42 U.S.C. 2000e-16 (prohibiting discrimination by federal employers).

Plaintiffs with circumstantial evidence of retaliation must proceed under the *McDonnell Douglas* burden shifting framework. *Fabela v. Socorro I.S.D.*, 329 F.3d 409, 415 (5th Cir. 2003). Under this framework, Plaintiff may create an inference of discrimination by showing (1) that he engaged in an activity protected by Title VII; (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191(5th Cir. 2001). If the plaintiff is successful, an inference of discrimination is created and the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment decision. If the defendant articulates a legitimate reason, then the inference of discrimination falls away and plaintiff is left with the burden of proving that defendant's articulated legitimate reason was a pretext for retaliation. *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

In determining whether an adverse employment action was taken as a result of retaliation, the Court of Appeals for the Fifth Circuit has instructed its District Courts to focus on the final decision maker. *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted). Any employer action that would be "materially adverse to a reasonable employee or job applicant" satisfies the "adverse employment action" requirement. *Burlington Northern & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2409 (2006).

*D. The Exhaustion Requirement*

Before bringing a retaliation claim to court, federal employees must exhaust their administrative remedies. *Brown v. General Serv. Admin.*, 425 U.S. 820, 96 S. Ct. 1961, 1967-68 (1976); *Martinez v. Dep't. of U.S. Army*, 317 F.3d 511 (5th Cir. 2003); 29 C.F.R. § 1614.107

(2005). It is unclear whether exhaustion is "merely a prerequisite to suit" or "a requirement that implicates subject matter jurisdiction." *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006). To determine whether a claimant has exhausted his administrative remedies, the court examines the administrative charge and speculates as to the scope of the investigation likely to arise from it. *Pacheco* 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

*E. Standard on Summary Judgment*

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

III. Application of Law to the Facts

Carter's claims fail as a matter of law. His Rehabilitation Act claim fails because Carter's PTSD does not substantially interfere with a major life activity, and thus, he is not an "individual with a disability" for the purposes of the Act. Carter's retaliation claim fails because he has not shown that the Agency's articulated legitimate reason for terminating him was pretextual. Finally, Carter's claims of associational discrimination and pre-termination retaliation are unexhausted and not amenable to review.

*A. Carter is not an individual with a disability under the Rehabilitation Act.*

Carter has not shown that his disability substantially limits one of life's major activities. He asserts that his PSTD substantially limits his ability to work and sleep, but the evidence does not support either claim. First as to work, Cater's PTSD only limits his ability to pilot light piston driven aircraft. Under *Sutton* and *Hileman*, a disability must interfere with the claimant's ability to perform a range of jobs, not just the job of his choice. Carter's PTSD does not interfere with his ability to perform a range of jobs; it does not even interefere with his ability to perform the job of pilot. Carter's sleep claim is, similarly, flawed. Carter's disorder is treatable with medication and ceases altogether if he does not pilot light piston driven aircraft. Under *Sutton*, treatable conditions do not qualify an individual for protection under the Act.

*B. Carter has not introduced evidence sufficient to support a finding that the Agency's articulated legitimate reason for terminating him was pretextual.*

The Agency claims Carter was removed because he refused directed reassignment. Carter's does not address this critical issue, and the record reflects no evidence that the Agency's reason is pretextual. Instead, Carter's response assumes that if he succeeds in showing that his directed reassignment was unfair, he will be excused from any responsibility for having failed to accept it. Carter has not pled, much less introduced evidence, that he suffered a constructive discharge. Moreover in 2002, Carter signed a Mobility Agreement (Ex. T.) acknowledging that he understood that he could expect directed reassignments throughout his career. Accordingly, Carter's retaliation claim must fail.

*C. Failure to Exhaust Administrative Remedies.*

Carter's associational disability and pre-termination retaliation claims are unexhausted and must be dismissed. The MSPB only has jurisdiction to review removals and other limited adverse employment actions. 5 U.S.C. § 7512. Carter's pre-removal retaliation claims fall outside this limited scope. If Carter had wanted to preserve his pre-removal claims, he was required to pursue an appeal before the EEO. Carter chose not to take this step and dismissed his EEO complaint.

Both Carter's pre-removal and associational disability claims are unexhausted for the additional reason that Carter did not raise them in his MSPB appeal. The Administrative Judge set out the following four issues: (1) whether Carter's directed reassignment was bona fide and based on legitimate management considerations; (2) if so, whether his removal promoted the efficiency of the service; (3) whether the agency's action is the result of disability discrimination; and (4) whether the agency's action is retaliation for Carter's protected EEO activity.[6] Carter did not object to this statement of the issues and therefore abandoned his pre-removal retaliation and associational disability claims. *See Barrera v. Ridge*, 03-cv-299, 2004 U.S. Dist. LEXIS 2461, *19 (W.D. Tex. December 8, 2004) (finding plaintiffs claims unexhausted on identical grounds).

IV. Conclusion

For the aforementioned reasons, the court ORDERS that Defendant's motion for summary judgment (Doc. 25) is GRANTED. Carter's complaint is DISMISSED.

SIGNED at Houston, Texas, this 26th day of March, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[6] *See* Summary of Telephonic Prehearing Conference (Ex. Y.)